IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STROMAN REALTY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  06 C 1187 |
| ) | |
| ) | Judge Robert W. Gettleman |
| FERNANDO E. GRILLO, Secretary of the ) | |
| Illinois Department of Financial and Professional ) | |
| Regulation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stroman Realty, Inc. ("Stroman"), filed a complaint in the Southern District of Texas against Defendant Fernando E. Grillo, Secretary of the Illinois Department of Financial and Professional Regulation ("Illinois"), seeking to enjoin Illinois from enforcing the Illinois Real Estate Licensing Act of 2000 ("Licensing Act"), 225 Ill. Comp. Stat. 454, and the regulations thereunder against Stroman for conducting its timeshare resale business.  Stroman alleges that Illinois's enforcement of the Licensing Act, as applied to Stroman, violates the Commerce Clause.  U.S. Const., §8, cl. 3.

Following a complaint from an Illinois resident, Illinois's Department of Financial and Professional Regulation ("IDFPR") sent Stroman a cease and desist letter, listing alleged activities Stroman had engaged in that required a real estate license in Illinois.  Stroman subsequently filed a lawsuit in the United States District Court for the Southern District of Texas for preliminary injunctive relief against Illinois's enforcement of the Licensing Act against Stroman.  Illinois then brought a formal administrative complaint against Stroman for violating the Licensing Act and the Illinois Timeshare Act, 765 Ill. Comp. Stat. 101 (2006).  Illinois

alleged that Stroman acted as a real estate agent in the State of Illinois without a license. Stroman moved to stay the administrative action in the Texas case. That case was transferred to this court, which denied the motion to stay. Illinois has now moved to dismiss pursuant to F.R.C.P. 12(b)(6) and F.R.C.P. 12(b)(1), arguing that Stroman's allegations do not constitute a constitutional violation, and that this court should abstain from exercising jurisdiction based on the Younger doctrine. Younger v. Harris, 401 U.S. 37 (1971). For the reasons discussed herein, Illinois's motion to dismiss is granted.

## **FACTS**

Plaintiff Stroman resells property timeshare intervals on the secondary market. Timeshare intervals allow a buyer to purchase the right to use a property or unit for a specified interval of time. They are typically sold or exchanged for the use of vacation resort properties. Stroman is located in Texas and is, along with its sales associates, licensed to engage in real estate brokering by the state of Texas.

Stroman operates a computerized listing service to match potential timeshare buyers to sellers. If a seller wants to advertise and list his timeshare with Stroman, he signs an advertising agreement. Stroman charges sellers a one-time advertising fee to list their timeshare intervals in its computer system and imposes a commission fee upon the completion of a successful sale. Stroman employs 80 sales associates to handle phone calls from potential buyers and sellers. The sales associates attempt to match a potential buyer's timeshare interval preferences, such as the duration, location, and price of the timeshare interval, to a timeshare listed in the computer system. Stroman also operates an internet website which allows users to view available

timeshare intervals and obtain relevant information. The internet user can submit an offer through the website or can call the company to speak with a sales associate.

Stroman's business transactions frequently involve parties and properties residing in multiple states. For example, Stroman might match a New York buyer with a Nebraska seller for a timeshare interval located in California. Stroman's sales associates field approximately 1,000 calls daily from across the country, some of which require inquiry into timeshare interval properties located in several states. To facilitate its business activities, the company solicits buyers, sellers and potential referral sources, such as real estate agencies and developers, of timeshare intervals. To do so, Stroman advertises its services nationally and internationally. Stroman places daily advertisements in national, regional, and local newspapers, as well as advertising in specialty magazines, trade publications, and on the internet. The company also conducts large amounts of direct mail solicitations. Most of Stroman's advertisements generically promote its timeshare resale services rather than individual timeshare intervals.

## STANDARD OF REVIEW

Rule 12(b)(1) motions are premised on either facial or factual attacks on jurisdiction. Villasenor v. Indus. Wire & Cable, Inc., 929 F.Supp. 310, 311 (N.D.Ill. 1996). If the defendant makes a factual attack on the plaintiff's assertion of subject matter jurisdiction, it is proper for the court to look beyond the jurisdictional allegations in the complaint and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capital Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993) (per curiam); Bernhart v. United States, 884 F.2d 295, 296 (7th Cir. 1989). The Supreme Court has held that an attempt to plead a federal claim fails only where it "clearly appears to be immaterial and made

3

solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83, 66 S. Ct. 773, 90 L.Ed. 939 (1946).

## DISCUSSION

Illinois has moved to dismiss arguing that: (1) Stroman's complaint, on its face, does not state a claim for a violation of the dormant Commerce Clause; and (2) this court should refrain from exercising jurisdiction under the Younger[1] abstention doctrine. Because this court finds that abstention is warranted, there is no need to discuss the merits of Stroman's dormant Commerce Clause argument. See Moses v. Kenosha County, 826 F.2d 708, 710 (7th Cir. 1987) (dismissal without decision regarding constitutional claims is appropriate procedure when Younger abstention applies); Green v. Benden, 281 F.3d 661, 666 (7th Cir. 2002) (merits of challenge to denial of plaintiff's request for injunctive relief not needed because Younger abstention was appropriate).

## ABSTENTION

The Younger doctrine originally held that federal courts should abstain from hearing a challenge to the constitutionality of a state criminal statute when the plaintiff bringing the challenge is being prosecuted in a state court for violating that statute. Younger, 401 U.S. 37. Due to "principles of comity and federalism . . . federal courts should refrain from enjoining state criminal prosecutions." Jacobson v. Vill. of Northbrook Mun. Corp., 824 F.2d 567, 569 (7th Cir. 1987). Younger is "fully applicable to civil proceedings in which important state interests are involved," Moore v. Sims, 442 U.S. 415, 423 (1979), and has subsequently been held to apply to state administrative proceedings, Ohio Civil Rights Comm'n. v. Dayton Christian Sch., Inc., 477

---

[1] Younger v. Harris, 401 U.S. 37 (1971).

U.S. 619, 627 (1986). Thus, Younger abstention "requires federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate." Green v. Benden, 281 F.3d 661, 666 (7th Cir. 2002) *citing* Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 436-37; Majors v. Engelbrecht, 149 F.3d 709, 711 (7th Cir. 1989). When a plaintiff in federal court, after having already filed a complaint, becomes a defendant in a state criminal proceeding, Younger abstention still applies so long as the federal court has not engaged in any "proceedings of substance on the merits." Hicks v. Miranda, 422 U.S. 332 (1975). See also Majors, 149 F.3d at 713.

First, with regard to timing, Stroman argues that because the administrative action was filed *after* Illinois was served with Stroman's federal complaint, Younger abstention is inappropriate. After the Supreme Court's holding in Hicks, however, the timing of the filing of the state and federal court lawsuits is largely unimportant, provided the federal suit has not progressed to any "proceedings of substance on the merits." See Doran v. Salem Inn, Inc., 422 U.S. 922, 929 (1975) (abstention proper when federal suit is still in an "embryonic stage"); Ciotti v. County of Cook, 712 F.2d 312, 313 (7th Cir. 1983) (decision on standing is not a decision on the merits). The instant case has clearly not progressed to the merits. In Ciotti, the Seventh Circuit cited with approval Giulini v. Blessing, 654 F.2d 189, 193 (2d Cir. 1981), and Nevin v. Ferdon, 413 F. Supp. 1043, 1049 (N.D. Cal. 1976), which both found abstention proper when the only action taken by the federal court was a ruling on jurisdiction or jurisdiction and abstention. This is analogous to the current case. The District Court for the Southern District of Texas

5

transferred the case to this court after an examination of jurisdiction, but no ruling on Stroman's dormant Commerce Clause claim has been made by either court. The only action this court has taken was to deny Stroman's request to stay the state court's administrative action. The denial did not address Stroman's substantive claim. Thus, no "proceedings of substance on the merits" have occurred in this litigation.

Because the timing of the lawsuits is not an issue, the question is whether the state proceedings meet the test for Younger abstention. First, the proceedings initiated through Illinois's administrative complaint are clearly judicial in nature. "For the purposes of Younger abstention, administrative proceedings are 'judicial in nature' when they are coercive – i.e., state enforcement proceedings." Majors, 149 F.3d at 712 (citations omitted). "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." New Orleans Pub. Serv., Inc., v. Council of City of New Orleans, 491 U.S. 350, 370-71 (1989) *citing* Prentis v. Atl. Coast Line Co., 211 U.S. 210, 226 (1908).

In the instant case, Illinois was clearly attempting to enforce the Licensing Act when it filed the administrative complaint against Stroman. The proceedings were coercive, not remedial. Additionally, the procedures governing the hearing conform to the definition of a judicial inquiry. The Licensing Act requires an investigation of those accused of violating the act. 225 Ill. Comp. Stat. 454/20-60. The investigation is reviewed for merit and notification is given to the accused that disciplinary proceedings are to be initiated. Id. The Real Estate Administration and Disciplinary Board ("Board") of the Office of Banks and Real Estate ("OBRE") then hears the charges and the accused and complainant may be represented by

counsel and present "statements, testimony, evidence and argument." Id. The Board and OBRE possess subpoena powers over "any persons or documents for the purpose of investigation or hearing . . . in the same manner as prescribed by law for judicial procedure in civil cases in the courts of [Illinois]." Id. The administrative proceeding conducted by the OBRE is clearly of an investigatory and judicial nature. It deals with prior events and applies present law. Thus, the administrative action initiated against Stroman was "judicial in nature."

Nor is there any question that regulation of the real estate profession is an important state interest. States have traditionally possessed the power to regulate the conduct of professionals and implement licensing schemes. Goldfarb v. Va. State Bar, 421 U.S. 773, 792-93 (1975). States have "a legitimate and substantial interest in prescribing reasonable, in the constitutional sense, qualifications for professions or occupations which require special knowledge or skill and intimately (affect) the public health, morals, order, or safety, or the general welfare." Thompson v. Schmidt, 601 F.2d 305, 308 (7th Cir. 1979) (citations and quotations omitted). Efforts by states to "preserve professional integrity" should be treated with deference. Scariano v. Justices of Supreme Court of State of Ind., 38 F.3d 920, 924 (7th Cir. 1994). Although no court has considered whether licensing real estate professionals is an important state interest, courts have found regulation of other professions to meet this standard.[2] Clearly, regulating the real estate profession is a traditional and important state interest.

Stroman argues that abstention is improper because Illinois's interest in regulating the real estate profession does not outweigh the federal government's interest in preventing trade

---

[2] See e.g. Trust & Inv. Advisers, Inc. v. Hogsett, 43 F.3d 290, (7th Cir. 1994) (regulating securities investment); Gilbertson v. Albright, 381 F.3d 965, 969 (9th Cir. 2004) (land surveyors); Van Breeman v. Zollar, 1997 WL 124266 (N.D. Ill. 1997) (professional engineers); Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 618 (9th Cir. 2003) (horse racing).

barriers in interstate commerce. Stroman cites Midwestern Gas Transmission Co. v. McCarty, 270 F.3d 536, 539 (7th Cir. 2001), and Harper v. Pub. Serv. Comm'n of W. Va., 396 F.3d 348, 357 (4th Cir. 2005), for support. Those cases, however, are inapplicable to the instant case.

In Midwestern Gas, the Midwestern Gas Transmission Company ("Midwestern") sought to enjoin the Southern Indiana Gas and Electric Company ("SIGECO") and Indiana Utility Regulatory Commission ("IURC") from engaging in state prosecutorial proceedings against it. SIGECO wanted the IURC to require Midwestern to receive permission before connecting its pipeline to two Indiana industrial gas users who wanted to use the pipes to transport out-of-state natural gas into Indiana. Midwestern had received approval from the Federal Energy Regulatory Commission ("FERC") prior to the initiation of the IURC proceedings. The Seventh Circuit held that Younger abstention was not appropriate because the federal Natural Gas Act created dual state-federal jurisdiction over the sale and distribution of natural gas. The Natural Gas Act granted FERC exclusive jurisdiction over the interstate transportation of natural gas. "[I]f for example [the state] is seeking to regulate activities that clearly are under exclusive federal control, then there is no basis for invoking *Younger*." Midwestern Gas, 270 F.3d at 539.

The regulation of those acting as real estate professionals in Illinois, however, as Illinois points out, is not an activity under either exclusive federal control or dual state-federal jurisdiction. Rather, it is an important and traditional state interest. "The [Younger] doctrine presupposes that the state has a valid interest that it is seeking to enforce" which, unlike Midwestern Gas, is present here. Id.

In Harper, Southern Ohio Disposal ("SOD") brought suit against The Public Service Commission of West Virginia ("PSC") to enjoin the PSC from barring SOD from competing

8

with waste removal companies in West Virginia. Under West Virginia law, a common carrier such as SOD was required to obtain a "certificate of convenience and necessity" from the PSC to operate in the state. Applicants for the certificate had to show that the company already providing service in the area was not "adequately serving the same territory." This requirement effectively granted a monopoly to waste haulers who already had a certificate for an area. The Fourth Circuit held that the state interest protected by the certificate requirement was "limiting access to the waste removal market" because a "limitation on market access to maintain exclusive franchises for existing enterprises" is not comparable to legitimate neutral regulation. Harper, 396 F.3d at 350, 355 *citing* PSC. W. Va. Code Ann, § 24A-3-3(a) (Michie 2004).

The Illinois Licensing Act, in contrast, does not create a virtual monopoly for present real estate license holders. Stroman is able to obtain a license without regard to any other license holder. 225 Ill. Comp. Stat. 454. Pointedly, the Harper court recognized that regulation of business professionals such as insurance agents and state/local housing code enforcement are important state interests. Harper, 396 F.3d at 352-53. Thus, the Harper court would no doubt view licensure of real estate professionals in the same light.

Additionally, the OBRE's administrative proceeding offers an adequate opportunity for review of Stroman's constitutional claims. "Subsequent judicial review is a sufficient opportunity." Majors, 149 F.3d at 713 *citing* Dayton Christian Sch., 477 U.S. at 629. The Licensing Act states that "final administrative decisions of OBRE shall be subject to judicial review pursuant to the provisions of the Administrative Review Law." 225 Ill. Comp. Stat. Ann. 454/20-75. When reviewing an administrative agency's decision under the Administrative Review Law, 735 Ill. Comp. Stat. Ann. 5/3-101, the Appellate Court of Illinois independently

9

reviews the agency's conclusions of law according to a *de novo* standard, including any constitutional issues brought on appeal. Home Interiors and Gifts, Inc. v. Dep't of Revenue, 318 Ill. App. 3d 205, 209-10 (1st Dist. 2000). Stroman thus has a definite and adequate opportunity to bring its constitutional claim in Illinois state court.

Stroman argues that it is not required to raise its constitutional claim in state court because Illinois has no compulsory counterclaim rule, citing Peregrine Fin. Group, Inc. v. Martinez, 712 N.E. 2d 861, 868 (Ill. App. 1999). Peregrine involved an arbitration agreement and is not relevant with regard to a state administrative proceeding. In any case, Green counsels that it is irrelevant whether the constitutional claims are actually raised in state court, because the "federal court should assume that the state procedures will afford an adequate remedy." Green, 281 F.3d at 667 *citing* Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987). Thus, it matters not whether Stroman must raise a constitutional claim; it is sufficient that it can do so.

Finally, there are no extraordinary circumstances that would make Younger abstention improper. Because the present circumstances satisfy the three Younger requirements, abstention is inappropriate only if: "(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) there is an extraordinarily pressing need for immediate equitable relief; or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions." Jacobson, 824 F.2d at 569-70 (citations and quotations omitted). The exceptions to enforcing the Younger doctrine are extremely narrow. Arkebauer v. Kiley, 985 F.2d 1351, 1358 (7th Cir. 1993). None of these elements are present in this case.

Illinois's administrative proceeding was not brought in bad-faith or to harass. This prong "requires more than a mere allegation and more than a 'conclusory' finding." Grandco Corp. v.

Rochford, 536 F.2d 197, 203 (7th Cir. 1976). Stroman makes no allegation that OBRE's conduct was harassing or in bad-faith. Nor does Stroman have an extraordinarily pressing need for immediate equitable relief. Stroman has argued that it has and will continue to suffer irreparable harm as a result of Illinois's enforcement of the Licensing Act and claims it will face "continued administrative actions." Pl.'s Resp. Br., 15. Stroman does not specify whether the actions will be from the OBRE in Illinois or from real estate licensing agencies in other states. The administrative action itself, however, will not cause Stroman irreparable injury. Although a negative outcome in the administrative hearing and state court might be adverse to Stroman, it is not for this court to say whether Stroman will succeed in those forums. Merely appearing at the administrative hearing or appealing in state court will not cause irreparable harm or injury.

Nor is the Licensing Act flagrantly and patently unconstitutional. For this requirement to be met, a statute must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Pincham v. Ill. Judicial Inquiry Bd., 872 F.2d 1341, 1350 (7th Cir. 1989) *citing* Younger, 401 U.S. at 53-54 *citing* Watson v. Black, 313 U.S. 387, 402 (1941). "[T]he possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith efforts to enforce it." Id., 872 F.2d at 1350. The Licensing Act is not so flagrantly unconstitutional as to fit this description. Although Stroman claims that the Act violates the constitution as applied to it, the Act is clearly constitutional as applied to the vast majority against whom it is applied.

Finally, Stroman has also argued that abstention in this circumstance would require exhaustion before it could assert a federal claim, citing Patsy v. Bd. of Regents of State of Fla.,

11

457 U.S. 496, 503-04 (1982). However, the Supreme Court in Dayton Christian Schools determined that the application of the Younger doctrine to state administrative proceedings is compatible with Patsy, which held that administrative remedies need not be exhausted prior to the initiation of a §1983 lawsuit in federal court. "Unlike Patsy, the administrative proceedings [in Dayton Christian Schools] are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest." Dayton Christian Sch., 477 U.S. at 627 (n. 1). This exactly describes the instant case.

While it is true that Younger abstention is a narrow doctrine reserved only for exceptional circumstances, when the requirements of Younger are met, "abstention is not only permissible but expected." Hogsett, 43 F.3d 290 at 294 *citing* Younger, 401 U.S. at 37 (1971). Accordingly, this court grants Defendant Illinois's motion to dismiss based on Younger abstention.

## CONCLUSION

For the reasons discussed herein, the court abstains from exercising jurisdiction, and dismisses the instant case without prejudice.


**ENTER:** **July 18, 2006**

‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌
_____
**Robert W. Gettleman**
**United States District Judge**